1  KIRTON | McCONKIE, P.C.
2  James B. Belshe, Esq.*
   (jbelshe@kmclaw.com)
3  James T. Burton, Esq.*
   (jburton@kmclaw.com)
4  60 East South Temple, Suite 1800
   Salt Lake City, UT  84111
5  Telephone:  (801) 328-3600
   Facsimile:  (801) 321-4893
6  *(Pro Hac Vice)
7
   KINDRED | POSEY
8  Alan M. Kindred (Bar No. CA 135145)
   (Alan.Kindred@kindredposey.com)
9  Ivan Posey (Bar No. CA 196386)
   (Ivan.Posey@kindredposey.com)
10 1603 Manor Gate Road
   Hacienda Heights, CA 91745
11 Telephone:  (888) 499-5558
   Facsimile:  (213) 559-8822
12
13 *Attorneys for Plaintiff*
   Cambrian Science Corporation
14

15          **UNITED STATES DISTRICT COURT**
           **CENTRAL DISTRICT OF CALIFORNIA**
16               **SOUTHERN DIVISION**

17 CAMBRIAN SCIENCE                    Case No. SACV 11-1011-JST (ANx)
   CORPORATION, a California
18 corporation,                        Hon. Josephine Staton Tucker

19    Plaintiff,                       Magistrate Judge Arthur Nakazato

20 v.                                  **NOTICE OF MOTION AND MOTION
                                       BY PLAINTIFF CAMBRIAN
21 COX COMMUNICATIONS, INC., a         SCIENCE CORPORATION TO
   Delaware corporation, *et al.*,     STRIKE THE DECLARATION OF
22                                     DR. KOCH AND TO PRECLUDE
                                       THE DEFENDANTS FROM
23    Defendants.                      RELYING ON EXPERT TESTIMONY
                                       FOR CLAIM CONSTRUCTION**
24
                                       Hearing Date:    May 17, 2012
25                                     Time:            10:00 a.m.
                                       Place:           Courtroom 6B
26                                     Before Magistrate Judge Nakazato
27
28

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at the above time and place Plaintiff Cambrian Science Corporation will move to strike the declaration of Dr. Koch and to preclude the Defendants from relying on expert testimony for claim construction.

This motion is made pursuant to Local Rule 37-1 and is based on the attached Joint Stipulation re: Plaintiff Cambrian Science Corporation's Motion to Strike the Declaration of Dr. Koch and to Preclude the Defendants from Relying on Expert Testimony for Claim Construction, any supplemental memoranda filed under Local Rule 37-2.3, and such arguments as may be presented at the hearing.

Respectfully submitted,

DATED:  April 25ᵗʰ, 2012          KIRTON | McCONKIE, P.C.

By:/s/James B. Belshe
James B. Belshe (*pro hac vice*)
James T. Burton (*pro hac vice*)

KINDRED | POSEY
Alan M. Kindred (Bar No. CA 135145)
Ivan Posey (Bar No. CA 196386)

*Attorneys for Plaintiff*
Cambrian Science Corporation

1

## **CERTIFICATE OF SERVICE**

2      I hereby certify that on this the 25th day of April, 2012, I filed a copy of the

3  foregoing on the Court's CM/ECF system, which provides service to all counsel of

4  record.

5

6                                    /s/ Heather Bartlett

7

8                                                              4826-8996-7887.1

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

KIRTON | McCONKIE, P.C.
James B. Belshe, Esq. (*Pro Hac Vice*)
(jbelshe@kmclaw.com)
James T. Burton, Esq. (*Pro Hac Vice*)
(jburton@kmclaw.com)
60 East South Temple, Suite 1800
Salt Lake City, UT  84111
Telephone:  (801) 328-3600
Facsimile:  (801) 321-4893

KINDRED | POSEY
Alan M. Kindred (Bar No. CA 135145)
(Alan.Kindred@kindredposey.com)
Ivan Posey (Bar No. CA 196386)
(Ivan.Posey@kindredposey.com)
1603 Manor Gate Road
Hacienda Heights, CA 91745
Telephone:  (888) 499-5558
Facsimile:  (213) 559-8822

*Attorneys for Plaintiff*
Cambrian Science Corporation

Ruffin B. Cordell (*Pro Hac Vice*)
cordell@fr.com
Joseph V. Colaianni (*Pro Hac Vice*)
colaianni@fr.com
Peter J. Sawert  (*Pro Hac Vice*)
sawert@fr.com
FISH & RICHARDSON P.C.
1425 K Street NW, 11th Floor
Washington, DC 20008
Telephone:  202-783-5070
Facsimile:  202-783-2331

Michael A. Amon, SBN 226221
amon@fr.com
Michael M. Rosen, SBN 230964
rosen@fr.com
Olga I. May, SBN 232012
omay@fr.com
FISH & RICHARDSON P.C.
12390 El Camino Real
San Diego, CA 92130-2081
Telephone:  858-678-5070
Facsimile:  858-678-5099

1    *Attorneys for All Named Defendants*

2

3

### UNITED STATES DISTRICT COURT

4

### CENTRAL DISTRICT OF CALIFORNIA

5

### SOUTHERN DIVISION

6

7    CAMBRIAN SCIENCE                        Case No. SACV 11-1011-JST (ANx)
     CORPORATION, a California
8    corporation,                            **JOINT STIPULATION RE:**
                                             **PLAINTIFF CAMBRIAN SCIENCE**
9    Plaintiff,                              **CORPORATION'S MOTION TO**
                                             **STRIKE THE DECLARATION OF**
10   v.                                      **DR. KOCH AND TO PRECLUDE**
                                             **THE DEFENDANTS FROM**
11   COX COMMUNICATIONS, INC., a             **RELYING ON EXPERT TESTIMONY**
     Delaware corporation, *et al.*,         **FOR CLAIM CONSTRUCTION**
12
     Defendants.                             Honorable Josephine Staton Tucker
13
                                             Claim Construction
14                                           Discovery Cut-off:    June 6, 2012
                                             Pretrial Conf.:       October 21, 2013
15                                           Trial Date:           November 5, 2013
16
                                             **Claim Construction Discovery Matter**
17

18

19

20

21

22

23

24

25

26

27

28

2

# **TABLE OF CONTENTS**

**Page(s)**

CAMBRIAN'S INTRODUCTION .............................................................................. 1

DEFENDANTS' INTRODUCTION ........................................................................... 2

CAMBRIAN'S STATEMENT OF RELEVANT FACTS ........................................ 4

DEFENDANTS' STATEMENT OF RELEVANT FACTS ...................................... 7

CAMBRIAN'S ARGUMENT ................................................................................... 10

    I.    Dr. Koch's Declaration Should be Stricken and the Defendants Should be
           Precluded from Relying on Expert Testimony in Connection with Claim
           Construction ................................................................................................ 10

DEFENDANTS' ARGUMENT ................................................................................. 18

    I.    Cambrian's Motion Is Premature ............................................................... 18

    II.   Defendants Complied With the Requirements of Patent L.R. 4-2 ............ 19

        a.    Cambrian Misinterprets Patent L.R. 4-2 to Require Expert
              Declarations ...................................................................................... 19

        b.    Defendants Timely Disclosed Their Intent to Rely on Expert
              Testimony .......................................................................................... 21

    II.   Any Alleged Violation Resulted in No Prejudice ..................................... 22

    III.  Excluding Expert Testimony Would Severely Prejudice Defendants If
           Cambrian's Expert is Allowed to Testify ................................................... 24

CAMBRIAN'S CONCLUSION ................................................................................ 25

DEFENDANTS' CONCLUSION ............................................................................. 25

1       Pursuant to Local Rule 37-2,[1] Plaintiff Cambrian Science Corporation

2   ("Cambrian") and all named Defendants submit this Joint Stipulation setting forth

3   their respective positions regarding Cambrian's Motion to Strike the Declaration of

4   Dr. Koch and to Preclude the Defendants from Relying on Expert Testimony for

5   Claim Construction.  This motion follows the meeting of counsel pursuant to Local

6   Rule 37-1, which was held on April 16, 2012.  The parties were unable to resolve

7   their differences at the April 16, 2012 meet-and-confer.

8   **CAMBRIAN'S INTRODUCTION**

9       On April 12, 2012, pursuant to the applicable local rules and the Court's

10  January 5, 2012 Order (the "Scheduling Order," Dkt. No. 78), the parties

11  simultaneously exchanged their respective "Preliminary Claim Constructions and

12  Extrinsic Evidence."   For its part, Cambrian served its Preliminary Claim

13  Constructions and Extrinsic Evidence on April 12, 2012, which included a

14  declaration from Dr. Steven M. Blair, Ph.D. in support of Cambrian's proposed

15  constructions.  The Defendants, on the other hand, elected not to rely on expert

16  testimony with respect to their proposed constructions.  As a result, while the

17  Defendants timely served their Preliminary Claim Constructions, the Defendants

18  failed to (or consciously chose not to) provide Cambrian with either a designation of

19  supporting extrinsic expert testimony or a description of the substance of any such

20  evidence.  The day after receiving and reviewing Cambrian's Preliminary Claim

21  Constructions and Extrinsic Evidence, the Defendants (apparently) came to regret

22  their decision not to rely on expert testimony for claim construction.  To this end, the

23  Defendants, after having Cambrian's substantive claim constructions in hand, hastily

24  retained an expert to rubber stamp their previously served definitions *ex post facto*.

25

26  ───────────────
    [1] While factually distinct, *Pulse Eng'g, Inc. v. Mascon, Inc.*, Civ. No. 08-cv-595, 2009 WL

27  250058, *3 (Feb. 3, 2009 S.D. Cal.) held that, under similar legal circumstances, the issue
    addressed herein "triggers the proscriptions of Fed. R. Civ. P. 37."

28

Unfortunately for the Defendants, the applicable local rules require a simultaneous exchange and were designed to thwart such tactics and to prevent the later use of extrinsic evidence one party tactically seeks to withhold until a later date. For this reason, as set forth in greater detail below, the Defendants should be wholly precluded from relying on expert testimony with respect to claim construction.

## DEFENDANTS' INTRODUCTION

Cambrian's Motion to Strike misinterprets the Northern District of California's Patent Local Rules and makes irresponsible and false allegations unsupported by the record. Cambrian seeks the completely unjustified, draconian measure of excluding *any and all* reliance by Defendants on expert testimony in connection with claim construction in this case based on its misinterpretation of the Patent Local Rules. Contrary to Cambrian's rhetoric below, nothing in the Court's Rules or Patent Local Rule 4-2 requires the submission of actual testimony in the form of an expert declaration at this juncture in the case. The purpose of Patent L.R. 4-2 is to provide a mechanism for the exchange of preliminary claim constructions and to place the opposing party on notice of evidence that may be used in support of a party's preliminary constructions. The Patent Local Rules contemplate subsequent meet and confers between the parties to narrow any disputes regarding preliminary claim constructions. (*See, e.g.*, Patent L.R. 4-2(c).)

On April 12, the parties exchanged preliminary claim constructions and supporting evidence pursuant to Patent L.R. 4-2. Cambrian surprisingly submitted a declaration of its expert with its Rule 4-2 disclosures. Although Defendants had retained a technical expert who had assisted them with claim construction, the parties had not held any discussions relating to the use of experts in connection with claim construction prior to the date for exchanging preliminary proposed constructions and therefore Cambrian's intentions regarding the use of experts was unknown to Defendants at that time. When it became apparent to Defendants on April 12 that Cambrian intended to proffer the testimony of its expert in connection

with claim construction, Defendants sent a follow-up e-mail that same day advising Cambrian of their intent to rely upon expert opinions in support of their constructions and outlining the subject matter of such expert opinions. Following up on this notice, Defendants promptly provided Cambrian with a declaration of their expert, Dr. Thomas L. Koch, on Sunday, April 15.

Seizing on this as a "gotcha" moment, Cambrian alleges the Koch declaration was untimely under Patent L.R. 4-2. Cambrian is wrong on this front; Defendants fully complied with Patent L.R. 4-2 and Cambrian cannot credibly deny that it was not placed on notice on April 12 of Defendants' intent to rely on expert testimony in connection with claim construction. No declarations were due on April 12, nor are they due now; Defendants served Dr. Koch's declaration as promptly as possible after learning of Cambrian's intent to rely on expert testimony in the hope of avoiding the burdensome motion practice that Cambrian has unfortunately decided to initiate.

Even accepting, *arguendo*, Cambrian's erroneous contention that there has been a violation of Patent L.R. 4-2, Cambrian cannot and has not credibly articulated any prejudice it has suffered due to a one business-day delay in receiving a declaration that was not even required in the first place. Dr. Koch's declaration did not change any of Defendants' proposed constructions or supporting evidence, and he did not receive or review Cambrian's proposed constructions and thus did not comment on them in his declaration. Claim construction discovery closes on June 6, 2012, almost two months after the date for exchanging preliminary claim constructions in accordance with Patent L.R. 4-2. There is simply no prejudice to Cambrian here, let alone the severe type of prejudice that would be required to justify the draconian remedy Cambrian seeks here.

Indeed, Cambrian's requested remedy would deprive the Court of hearing from experts on both sides on an issue – claim construction – that is arguably the most important issue in the case. In many instances claim construction is case

3

dispositive. The Court should be afforded the benefit of hearing experts on both sides, if it will hear experts at all. To this end, Defendants respectfully seek the Court's guidance regarding its preference for expert testimony at the *Markman* hearing. Defendants believe that the intrinsic evidence should be sufficient to resolve the claim construction disputes, and if the Court agrees then Cambrian's motion is moot. If the Court will allow expert testimony at the *Markman* hearing, then Defendants submit that it should hear testimony from experts on both sides so that the Court can consider the full body of evidenced in rendering its claim constructions. Receiving this guidance from the Court will allow the parties to do what they should be doing now – discussing the narrowing of claim construction disputes and, if necessary, a reasonable schedule for claim construction discovery – instead of burdening the Court with unnecessary motions practice. Accordingly, the Court should deny Cambrian's motion.

## CAMBRIAN'S STATEMENT OF RELEVANT FACTS

1.      Pursuant to the Court's January 5, 2012 Scheduling Order (Dkt. No. 78) and Northern District of California Local Patent Rule (hereinafter "L.P.R.") 4-2 (as adopted in the Court's October 5, 2011 Order (Dkt. No. 45 at ¶ 4)), the parties exchanged their respective Preliminary Claim Constructions and Extrinsic Evidence on April 12, 2012.

2.      Owing to the requirement in L.P.R. 4-2 that "the parties shall *simultaneously* exchange proposed constructions" and "[a]t the same time" exchange extrinsic evidence (*see* N.D. CAL. LOC. PAT. R. 4-2(a)-(b) (emphasis added)), the parties agreed to simultaneously serve their respective Preliminary Claim Constructions and Extrinsic Evidence at 8:00 PM Eastern Time.  (*See* email correspondence dated April 12, 2012, attached as **Exhibit "A"**.)

3.      Pursuant to the above-referenced agreement, the parties exchanged their respective Preliminary Claim Constructions and Extrinsic Evidence at approximately 8:00 PM Eastern Time on April 12, 2012.  (*See* email correspondence

dated April 12, 2012 at 8:00 PM and 8:01 PM Eastern Time, attached as **Exhibit "B"**.)

4.      For Cambrian's part, the 8:00 PM Eastern Time exchange included Cambrian's Preliminary Claim Constructions and Extrinsic Evidence and, among other extrinsic evidence, the Declaration of Dr. Blair (an expert in the relevant field) in support of the same.   (*See id.*; *see also* Cambrian's Preliminary Claim Constructions and Extrinsic Evidence, including the associated exhibits, attached as **Exhibit "C"**.)

5.      The Defendants, on the other hand, provided only their Preliminary Claim Constructions devoid of any extrinsic evidence save for a lone citation to the Oxford English Dictionary for the word "substantially."[2]   (*See* Ex. B; *see also* Defendants' Preliminary Claim Constructions, attached as **Exhibit "D"**.)

6.      In particular, the Defendants' reciprocal 8:00 PM Eastern Time exchange failed to designate any supporting extrinsic expert testimony, let alone even a rudimentary description of the substance of any such expert testimony or a listing of any opinions to be rendered by any such expert in connection with claim construction. (*See id.*)

7.      Notwithstanding the mutual exchange at 8:00 PM Eastern Time on April 12, 2012 as discussed above, at 1:47 AM Eastern Time the following day the Defendants sent the following correspondence:

> [We] note that Cambrian has included with its claim constructions a declaration in support of its constructions.  We do not believe the rules require the submission of declarations at this juncture.  More fundamentally, we do not believe that expert testimony is necessary in connection with the claim construction proceedings, but if Cambrian is intending to rely on expert testimony in its claim construction briefing or at the *Markman* hearing, Defendants will rely on expert opinions in support of their constructions and in rebuttal to Cambrian's.  In

---

[2] Notably, the Defendants' still have yet to produce a copy of the relevant passages from the Oxford English Dictionary as require by L.P.R. 4-2.  (*See* N.D. CAL. LOC. PAT. R. 4-2(b).)

particular, Defendants may rely on the testimony of their experts to provide opinions relating to: the '312 Patent and the technology relevant to the '312 Patent, the appropriate level of skill in the art, the proper understanding of a person having ordinary skill in the art of the claim language identified by the parties for construction as reflected in Defendants' proposed constructions and the bases therefor [*sic*], and Cambrian's proposed constructions. Please advise as to Cambrian's intentions in this regard. If you prefer, we can discuss a schedule for exchange of expert reports on claim construction, and follow-up discovery (*e.g.*, depositions) on claim construction, but these activities are not included in the procedural schedule and Defendants do not believe that they are necessary.[3] Please let us have your thoughts so that the parties are on the same page regarding the nature and scope of the claim construction proceedings.

(*See* email correspondence sent at 1:47 AM Eastern Time on April 13, 2012, attached as **Exhibit "E".**)

8.     Notably, the foregoing correspondence neither identifies an expert witness nor does it provide a description of the substance of *that expert's* proposed testimony, including a listing of any opinions to be rendered in connection with claim construction. (*See id.*)

9.     Later that same day (*i.e.*, April 13, 2012), the Defendants reiterated that they "do not believe expert testimony to be necessary to the claim construction process . . . ." (*See* email correspondence dated April 13, 2012, excerpts attached as **Exhibit "F".**)

10.     Notwithstanding the Defendants repeated and emphatic assertion that "the rules [do not] require the submission of declarations at this juncture" and that "expert testimony is [un]necessary in connection with the claim construction proceedings" (Ex. E; *see also* Ex. F), on April 15, 2012 at 11:33 pm Eastern Time— some three (3) days after the Court ordered deadline—the Defendants served their

---

[3] Notably, contrary to the Defendants' assertion, the Court's January 5, 2012 Scheduling Order specifically provides that the deadline to complete "Claim Construction Discovery," which pursuant to L.P.Rs. 4-2 and 4-4 includes any expert depositions with respect to claim construction, is June 6, 2012. (*See* Dkt. No. 78.)

so-called "Supplemental Preliminary Claim Constructions," which included the Declaration of Dr. Thomas L. Koch in support of the same.   (*See* email correspondence dated April 15, 2012, attached as **Exhibit "G"** (again asserting that "the rules do not require the submission of an expert declaration at this juncture"); *see also* Defendants' Supplemental Preliminary Claim Constructions, including the associated exhibits, attached as **Exhibit "H".**)  Tellingly, nowhere in the L.P.Rs. are the Defendants permitted to "supplement" their preliminary claim constructions and extrinsic evidence.

11.    Curiously, despite the fact that before providing Dr. Koch's Declaration the Defendants repeatedly took the position that "expert testimony is [un]necessary in connection with the claim construction proceedings" (Ex. E; *see also* Ex. F), Dr. Koch's Declaration inexplicably asserts that he "aided counsel for the Defendants in . . . formulating the Defendants' proposed claim constructions." (Ex. H at Koch Declaration at ¶ 3.)  This assertion is repeated in Paragraph 9—"I assisted counsel for Defendants in providing proposed constructions for the disputed language" (*id.* at ¶ 9)—despite the Defendants' self-proclaimed belief that such was wholly unnecessary at the time the Defendants' original Preliminary Claim Constructions were prepared and served (*see* Exs. E & F).

12.    To the severe prejudice of Cambrian, Dr. Koch's Declaration was prepared and served after the Defendants had received and reviewed Cambrian's Preliminary Claim Constructions and the Declaration of Dr. Blair in support of the same.  (*See generally* Ex. H.)

13.    Claim construction discovery is set to close in less than two (2) months, on June 6, 2012, and the parties are currently required to prepare and file a "Joint Claim Construction and Prehearing Statement" in less than three (3) weeks on May 7, 2012.  (Dkt. No. 78.)  (Pursuant to L.R. 37-2.1, a copy of the Scheduling Order is attached as **Exhibit "J".**)

## **DEFENDANTS' STATEMENT OF RELEVANT FACTS**

1.     In accordance with the Court's Scheduling Order (Dkt. No. 78), the parties exchanged Preliminary Proposed Claim Constructions and Extrinsic Evidence on April 12, 2012.  Cambrian's Patent L.R. 4-2 disclosures included a declaration of its expert Dr. Steven Blair in support of its proposed constructions. Although Defendants had retained a technical expert who had assisted them with claim construction, the parties had not held any discussions relating to the use of experts in connection with claim construction prior to the date for exchanging preliminary proposed constructions and therefore Cambrian's intentions regarding the use of experts was unknown to Defendants at that time.  When it became apparent to Defendants on April 12 that Cambrian intended to proffer the testimony of its expert in connection with claim construction, Defendants sent a follow-up e-mail on that same day that preliminary constructions were exchanged (April 12) at 10:47 PM PT advising Cambrian of its intent to rely upon expert opinions.[4]  (Ex. 1, April 12, 2012 E-mail from Colaianni to Rupp.)

2.     Defendants' April 12 e-mail communication noted that although they did not believe expert testimony to be necessary in connection with claim construction given the intrinsic record, they reserved the right to offer the testimony of their expert in support of their proposed constructions and in rebuttal to Cambrian's proposed construction in the event that Cambrian intended to offer testimony from its expert.  (*See* Ex. 1.)  Defendants' April 12 e-mail communication summarized the subject matter of the expert testimony Defendants intended to offer: "In particular, Defendants may rely on the testimony of their experts to provide opinions relating to:  the '312 Patent and the technology relevant to the '312 Patent, the appropriate level of skill in the art, the proper understanding of a person having ordinary skill in the art of the claim language identified by the parties for construction as reflected in Defendants' proposed constructions and the bases

---

[4] The parties' Joint Rule 26(f) Report includes an agreement that service via e-mail prior to 11:59 PM Pacific Time constitutes valid service on that day.  (*See* Dkt. No. 72 at 18.)

1   therefor, and Cambrian's proposed constructions." (*Id.*)

2   3.   Defendants' e-mail also requested that the parties meet and confer to

3   work out a more detailed schedule expert discovery, including an exchange of expert

4   reports in support of proposed claim constructions. (*Id.*)

5   4.   While Defendants do not interpret the Rules to require submission of

6   expert declarations at the Patent L.R. 4-2 juncture, Defendants followed up on their

7   April 12 notice to Cambrian and promptly supplied a declaration of their expert, Dr.

8   Thomas L. Koch, on Sunday, April 15, in an effort to begin a discussion on the

9   parameters of any claim construction discovery and in the hope of avoiding

10   unnecessary motion practice.  Contrary to Cambrian's unsupported allegation, Dr.

11   Koch was retained months before the Patent L.R. 4-2 deadline[5] and worked with

12   Defendants in the development of their proposed constructions.  (Ex. 2, April 15,

13   2012 E-mail from Colaianni to Rupp with Attachments re Supplement to

14   Preliminary Claim Constructions at Declaration of Dr. Thomas L. Koch at ¶¶ 3, 9.)

15   5.   Defendants served Dr. Koch's declaration on Sunday, April 15, 2012,

16   three days (one business day) after the exchange pursuant to Patent L.R. 4-2. (*Id.*)

17   Dr. Koch did not receive or review any of Cambrian's proposed constructions in

18   preparing his declaration, and his declaration includes no statements regarding them.

19   (*See id.* at Declaration of Thomas L. Koch at ¶31.)  The proposed claim

20   constructions and supporting information included in Dr. Koch's declaration do not

21   differ from those identified in the Defendants' Preliminary Proposed Claim

22   Constructions served on April 12, 2012. (*Compare* Ex. 2 at Declaration of Thomas

23   L. Koch to Ex. 3, Defendants' Preliminary Proposed Claim Constructions.)

24   6.   Concurrent with the service of Dr. Koch's declaration on April 15,

25   Defendants also served Supplemental Preliminary Proposed Claim Constructions

26   and Extrinsic Evidence pursuant to Patent L.R. 4-2 that makes reference to Dr.

27   ────────────────
[5] If helpful to the Court, Defendants would be happy to provide Dr. Koch's engagement letter for
28   *ex parte* review.

9

1  Koch's declaration.  (Ex. 2 at Supplemental Defendants' Supplemental Proposed

2  Preliminary Claim Constructions pp. 2-3.)

3         7.     The procedural schedule sets June 6, 2012 as the date for the parties to

4  complete claim construction discovery; June 21, 2012 as the date for Cambrian to

5  file its Opening Claim Construction Brief; July 5, 2012 as the date for Defendants to

6  file their Response Brief; July 12, 2012 as the date for Cambrian to file its Reply

7  Brief; and July 30, 2012 as the date for the Claim Construction Hearing.  (Dkt. No.

8  78).

9  **CAMBRIAN'S ARGUMENT**

10  **I.   Dr. Koch's Declaration Should be Stricken and the Defendants Should**

11       **be Precluded from Relying on Expert Testimony in Connection with**
     **Claim Construction**

12       As this is a patent case, it is procedurally governed by, *inter alia*, the Court's

13  January 5, 2012 Scheduling Order (Dkt. No. 78) and the Local Patent Rules (*see*

14  Dkt. No. 45 at ¶ 4 (adopting N.D. CAL. LOC. PAT. RS. 3-1 to 4-7)).  To this end, the

15  Scheduling Order mandates that (1) the parties exchange their respective Preliminary

16  Claim Constructions on April 12, 2012 and (2) the parties complete claim

17  construction discovery by June 6, 2012.  (Dkt. No. 78.)  The precise actions required

18  in connection with such deadlines are set forth in great detail in the adopted L.P.Rs.,

19  namely L.P.Rs. 4-2 and 4-4.

20       In pertinent part, L.P.R. 4-2 provides:

21
22  > Not later than 21 days after the exchange of the lists pursuant to Patent
> L.R.  4-1, the parties shall **simultaneously exchange proposed**
> **constructions** of each term identified by either party for claim
23  > construction. ....

24  > **At the same time the parties exchange their respective**
> **"Preliminary Claim Constructions,"** each party shall also **identify all**
25  > **references** from the specification or prosecution history that support its
> proposed construction **and designate any supporting extrinsic**
26  > **evidence including, without limitation,** dictionary definitions,
> citations to learned treatises and prior art, and **testimony of** percipient
27  > and **expert witnesses.**  Extrinsic evidence shall be identified by
> production number or by producing a copy if not previously produced.
28  > **With respect to any supporting witness,** percipient or **expert, the**
> **identifying party shall also provide a description of the substance of**

10

**that witness' proposed testimony that includes a listing of any opinions to be rendered in connection with claim construction.**

N.D. CAL. PAT. LOC. R. 4-2(a)-(b) (emphasis added).

With regard to the discovery process associated with claim construction, L.P.R. 4-4 continues: "Not later than 30 days after service and filing of the Joint Claim Construction and Prehearing Statement, **the parties shall complete all discovery related to claim construction, <u>including any depositions with respect to claim construction of any witnesses, including experts, identified in the Preliminary Claim Construction statement (Patent L.R. 4-2)</u>** . . . ." N.D. CAL. PAT. LOC. R. 4-4 (bold and underline emphases added).

Notably, Federal Circuit law governs the interpretation of local rules which apply only to patent cases and "directly affect the substantive patent law theories" presented by the parties. *See O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1364 (Fed. Cir. 2006). Such is the case here. To this end, the Federal Circuit has held that the "court may impose any 'just' sanction for the failure to obey a scheduling order, including 'refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting that party from introducing designated matters in evidence.'" *Id.* at 1363 (quoting FED. RS. CIV. P. 16(f) & 37(b)(3)(B)). As in this case, such sanctions are particularly appropriate "where the undisclosed information is significant and the party failing to make the timely disclosure lacked diligence." *MGM Well Servs., Inc. v. Mega Lift Sys., LLC*, Civ. No. H-05-1634, 2007 WL 433283, *2 (Jan. 24, 2007 S.D. Tex.) (citing *O2 Micro*, 467 F.3d at 1363-64), copy attached at **Exhibit "I"**.

In this case, notwithstanding the clear instruction set forth in the foregoing rules, the Defendants have repeatedly taken the position that "the rules [do not] require the submission of declarations at this juncture" and that "expert testimony is [un]necessary in connection with the claim construction proceedings . . . ." (*See*

11

Exs. E, F & G.)[6]  While the Defendants' interpretation of the foregoing rules is at diametric odds with the explicit language thereof, the Defendants' conduct was at least initially consistent with the Defendants' flawed understanding of such rules. Indeed, the Defendants' initial Preliminary Claim Constructions lack any extrinsic evidence, save for a lone citation to the Oxford English Dictionary for the word "substantially." (*See* Ex. D; *See* also n.2, *supra*.)  Moreover, the Defendants' initial Preliminary Claim Constructions fail to designate any supporting extrinsic expert testimony, let alone even a basic description of the substance of any such expert testimony or a listing of any opinions to be rendered by any such expert in connection with claim construction.  (*See* Ex. D.)  As such, the Defendants have deliberately waived the right to rely on expert testimony with respect to claim construction. *See MGM Well Servs.*, 2007 WL 433283 at *3 ("Absent any evidence whatsoever of diligence, and in light of the indication in the record that [the defendant] made a conscious decision to conceal its reliance on potentially significant evidence . . . the Court grants MGM's Motion to the extent it seeks exclusion of evidence . . . .").

While the Defendants' faulty interpretation of the foregoing rules stands in stark contrast to the plain language thereof, it is unquestionably the Defendants' prerogative to forego reliance on expert testimony in connection with claim construction proceedings.  Indeed, this is the precise course of action the Defendants elected prior to the April 12, 2012 exchange.  (*See, e.g.,* Ex. E ("More fundamentally, we do not believe that expert testimony is necessary in connection with the claim construction proceedings . . . .").)  As such, the Defendants should be

---

[6] The Defendants have also taken the confusing position that neither the rules nor this Court's January 5, 2012 Scheduling Order set forth any instruction regarding the timing or procedure for claim construction discovery. (*See* Exs. E, F & G.)  This position, however, is directly belied by the plain language of both L.P.R. 4-4 and the Scheduling Order (Dkt. No. 78), which collectively set forth both the timing and the relevant procedure for conducting claim construction discovery with respect to, *inter alia*, expert testimony. *See* N.D. CAL. LOC. PAT. R. 4-4; *see also* Dkt. No. 78.

1   held to their election.

2       This, however, is not what the Defendants are doing.  Instead, the Defendants

3   have taken the inexplicable position that their obligation to comply with L.P.Rs. 4-2

4   and 4-4 is triggered only by Cambrian's preceding reliance on expert testimony.

5   (*See, e.g.,* Ex. E ("we do not believe that expert testimony is necessary in connection

6   with the claim construction proceedings, **but if Cambrian is intending to rely on**

7   **expert testimony** in its claim construction briefing or at the *Markman* hearing,

8   **[then] Defendants will rely on expert opinions** in support of their constructions. . .

9   ." (bold emphasis added)).)   Such an interpretation would eviscerate the even-

10  handed approach espoused by L.P.R. 4-2's "simultaneous" exchange.  (*See* N.D.

11  CAL. PAT. LOC. R. 4-2.)  Indeed, the Defendants' interpretation renders L.P.R. 4-2 a

12  nullity, if not a mockery—the rule would be of little or no benefit if a party were

13  unilaterally allowed to change course upon receiving and reviewing its opponent's

14  substantive positions.  The Court cannot countenance such an illogical and uneven

15  approach.

16      Regardless, notwithstanding the Defendants' repeated and emphatic

17  assertion that "the rules [do not] require the submission of declarations at this

18  juncture" and that "expert testimony is [un]necessary in connection with the claim

19  construction proceedings" (Ex. E; *see also* Exs. F & G), several hours after receiving

20  and reviewing Cambrian's Preliminary Claim Constructions and Extrinsic Evidence

21  and the Declaration of Dr. Blair in support of the same, the Defendants scrambled to

22  marshal their own expert.  (*See* Ex. E.)

23      Even if such actions could conceivably fall within the meaning of L.P.R. 4-2

24  (which they cannot), the Defendants' alleged "notice" of a forthcoming expert the

25  day after the parties' exchange had taken place fails to meet the minimum

26  requirements of L.P.R. 4-2.  Indeed, the Defendants' April 13, 2012 correspondence

27  neither identifies an expert witness nor does it provide a description of the substance

28  of *that expert's* proposed testimony, including a listing of any opinions to be

13

rendered in connection with claim construction.   (*See* Ex. E.)   Instead, the Defendants merely attempt to provide a laundry list of topics generated *by counsel* upon which an expert *may* provide testimony.   In sum, not only was the April 13, 2012 correspondence too late to comply with L.P.R. 4-2, such correspondence fails to meet the substantive requirements of the rule.

Notwithstanding the Defendants' failure to timely or substantively comply with L.P.R. 4-2, Defendants have now tried to correct their waiver well after the proverbial eleventh-hour.   Indeed, some three (3) days *after* the Court-ordered deadline, the Defendants served their so-called Supplemental[7] Preliminary Claim Constructions, which included the Declaration of Dr. Koch in support of the same. (*See* Exs. G & H.)   Were the Defendants now allowed to rely on the opinions of Dr. Koch, either set forth in his Declaration or at a later time, Cambrian would be placed at a distinct prejudicial disadvantage.   Specifically, the Defendants initially elected not to rely on expert testimony at all with respect to claim construction. (*See* Ex. E.) Now, after having received and reviewed Cambrian's Preliminary Claim Constructions and Extrinsic Evidence, the Defendants have changed their approach. Unfortunately, the Defendants (and presumably Dr. Koch) were in possession of Cambrian's substantive positions when Dr. Koch's Declaration was prepared, signed, and ultimately provided to Cambrian.   Indeed, in view of the Defendants' failure to identify Dr. Koch by name until the very day his Declaration was served (*compare* Ex. E *with* Ex. G), Dr. Koch was presumably only retained *after* the Defendants had received and reviewed Cambrian's Preliminary Claim Constructions and Extrinsic Evidence.   Worse, Dr. Koch's Declaration was prepared with the benefit of having Cambrian's substantive and contrary positions in hand.   As such, the prejudice of now allowing the Defendants to circumvent the explicit requirements of L.P.R. 4-2 cannot be undone.   It would be manifestly unjust for

---

[7] As set forth previously, nowhere do the L.P.Rs. contemplate the "supplementation" of preliminary claim constructions and extrinsic evidence.

1  Cambrian to now suffer such a prejudicial disadvantage for having been the only
2  party to comply with the relevant rules requiring disclosure of extrinsic evidence.  In
3  other words, the Defendants should not be rewarded for failing to read the rules,
4  much less for consciously choosing to act contrary to the same.  This, however, is
5  precisely what the Defendants now seek to do.   For this reason, Dr. Koch's
6  declaration should be stricken and the Defendants should be precluded from relying
7  on expert testimony in connection with claim construction.

8      The prejudicial effect of the Defendants' deliberate change in course is
9  exacerbated by the reality that claim construction is *the* single most important phase
10  of patent litigation.  *See, e.g., ATD Corp. v. Lydall, Inc.*, 159 F.3d 534, 540 (Fed.
11  Cir. 1998) ("[T]he question of literal infringement was resolved upon the court's
12  construction of the claims."); *Markman v. Westview Instruments, Inc.*, 52 F.3d 967,
13  999 (Fed. Cir. 1995) (*in banc*) (Newman, J., dissenting) ("Deciding the meaning of
14  the words used in the patent is often dispositive of the question of infringement."),
15  *aff'd*, 517 U.S. 370 (1996); *MCV, Inc. v. King-Seeley Thermos Co.*, 870 F.2d 1568,
16  1570 (Fed. Cir. 1989) ("[T]he dispositive issue on the merits would be the definition
17  of the invention . . . ."); R. Polk Wagner & Lee Petherbridge, *Is the Federal Circuit*
18  *Succeeding?  An Empirical Assessment of Judicial Performance*, 152 U. Pa. L. Rev.
19  1105, 1119 (2004) ("[I]t is clear that claim construction plays a major—and perhaps
20  the major—role in patent infringement litigation."); *Accord Int'l Rectifier Corp. v.*
21  *IXYS Corp.*, 361 F.3d 1363, 1374-75 (Fed. Cir. 2004) ("Where the parties do not
22  dispute any relevant facts regarding the accused product . . . but disagree over
23  possible claim interpretations, the question of literal infringement collapses into
24  claim construction and is amenable to summary judgment." (quoting *Gen. Mills, Inc.*
25  *v. Hunt-Wesson, Inc.*, 103 F.3d 978, 983 (Fed. Cir. 1997) (internal quotation marks
26  omitted; ellipses in original))).  As such, not only would Cambrian be prejudiced if
27  the Defendants were allowed to rely on the testimony of Dr. Koch, such prejudice
28  would pollute the very crux of this case.  *See MGM Well Servs.*, 2007 WL 433283 at

1   *2 (sanctions are particularly appropriate "where the undisclosed information is

2   significant and the party failing to make the timely disclosure lacked diligence.").

3        In contrast, the Defendants will suffer virtually no prejudice if forced to

4   proceed in Dr. Koch's absence.  Indeed, as discussed previously, such would be

5   consistent with the very strategy the Defendants initially chose:  the Defendants did

6   not and do not believe that expert testimony is necessary in connection with claim

7   construction proceedings (*see, e.g.,* Ex. E ("More fundamentally, we do not believe

8   that expert testimony is necessary in connection with the claim construction

9   proceedings . . . .")).  Thus, depriving the Defendants of Dr. Koch during the course

10  of claim construction proceedings will have no impact on the Defendants' initially

11  chosen route.  The mere fact that Cambrian intends to rely on expert testimony does

12  nothing to impact the efficacy of the Defendants' deliberate and knowing strategy.

13       On a somewhat unrelated but nevertheless alarming note, Dr. Koch's

14  Declaration ostensibly includes calculated misrepresentations.  Indeed, as mentioned

15  above, the Defendants failed to even disclose Dr. Koch by name until his

16  Declaration was served (*compare* Ex. E *with* Ex. G), thus suggesting that Dr. Koch

17  was presumably only retained *after* the Defendants had received and reviewed

18  Cambrian's Preliminary Claim Constructions and Extrinsic Evidence.  Moreover, as

19  discussed at length previously, prior to providing Dr. Koch's Declaration, the

20  Defendants repeatedly took the position that "expert testimony is [un]necessary in

21  connection with the claim construction proceedings . . . ."  (*See* Exs. E, F & G.)

22  Nevertheless, despite the Defendants knowing and deliberate decision not to rely on

23  expert testimony for claim construction until after receiving Cambrian's Preliminary

24  Claim Constructions and Extrinsic Evidence, Dr. Koch's Declaration inexplicably

25  asserts that he "aided counsel for the Defendants in . . . formulating the Defendants'

26  proposed claim constructions."  (Ex. H at Koch Declaration at ¶ 3.)  This assertion is

27  repeated in Paragraph 9—"I assisted counsel for Defendants in providing proposed

28  constructions for the disputed language" (*id.* at ¶ 9)—despite the Defendants' self-

proclaimed belief that such was wholly unnecessary at the time the Defendants' original Preliminary Claim Constructions were prepared and served (*see* Exs. E, F & G).

In short, while the Defendants would apparently have this Court believe that Dr. Koch was retained in advance to work with them in lock-step to produce proposed definitions as would be understood by one of ordinary skill in the art, Dr. Koch was apparently hired after the fact merely to rubber stamp the Defendants' already-served proposed definitions.    Notably,    the    Defendants'    proposed constructions did not change upon the introduction of Dr. Koch; rather, the Defendants' proposed constructions remained identical. (Compare Ex. D with Ex. H.) Such further undermines both Dr. Koch's credibility and the Defendants' tardy reliance thereon.

In furtherance of this final point, Dr. Koch's Declaration is suspect for additional reasons. Specifically, the value of an expert report is to ultimately assist this Court in construing terms which may otherwise be overly technical and complex—a necessity in this case which involves sophisticated optical communications systems.  In other words, the value of an expert report lies in the expert's ability to accurately distill technical terms into concise and simple definitions which will aid the Court.  To this end, Cambrian spent several weeks working side-by-side with Dr. Blair, and Dr. Blair was integrally involved during that time period in reviewing relevant materials and in developing Cambrian's proposed preliminary constructions.  Conversely, as of at least April 13, 2012 at 1:47 AM EST the Defendants were emphatic that "expert testimony is [un]necessary in connection with the claim construction proceedings . . . ." (*See* Exs. E, F & G.) Indeed, as discussed previously, the Defendants initially intended to proceed through *Markman* without the benefit of an expert. (*See id.*)  Nevertheless, some three (3) days later, after the Defendants' had seen and reviewed Cambrian's substantive positions, the Defendants shifted to a reliance on expert testimony.    Thus,

1  Defendants have apparently tried to cram into a couple of days (over the weekend no

2  less) the work that required an intense investment of time from Cambrian and its

3  expert for several weeks leading up to the parties' simultaneous exchange of

4  preliminary constructions.   As such, the utility of Dr. Koch's hastily cobbled

5  together report is highly suspect.   Given that Dr. Koch's report is the epitome of a

6  "hired gun," it is likely to be of little benefit to this Court—undermining the very

7  purpose of such extrinsic evidence.

## DEFENDANTS' ARGUMENT

9  Cambrian's motion is an unnecessary exercise in rhetoric that attempts to

10  manufacture a Patent Local Rule violation and leverage it into premature and

11  unjustifiably harsh relief of precluding Defendants from offering *any* expert opinions

12  relating to claim construction issues.

13  As an initial matter, Cambrian's Motion may be moot if it is the Court's

14  preference not to consider expert opinions at all as part of the claim construction

15  process in this case.  For this reason, and in an effort to avoid the time and expense

16  of expert reports and depositions that may later prove unnecessary, Defendants

17  respectfully seek guidance regarding the Court's preference on the use of expert

18  witnesses in the claim construction context.

19  If the Court intends to hear expert testimony relating to claim construction

20  issues in this case, then the Court should deny Cambrian's Motion to Strike because

21  (1) the requested evidentiary exclusionary sanction is premature; (2) there has been

22  no violation of the Patent Local Rules, (3) Cambrian has not and will not suffer any

23  prejudice by the alleged violation of the Rules, and (4) Defendants would suffer

24  significant prejudice from the requested premature exclusionary sanction of expert

25  opinions.

26  **I.    Cambrian's Motion Is Premature**

27  Any motion to strike evidence related to claim construction should be heard at

28  the time of the *Markman* hearing, after all claim construction discovery is complete

and the Court in construing the claims can determine what evidence is necessary to ensure a complete record. Cambrian's motion seeks to exclude evidence which may prove useful to the Court. Claim construction discovery in this case, however, is ongoing. As of the date of Cambrian's motion, the deadline for filing the Rule 4-3 Joint Claim Construction Statement is still two weeks away. The Rule 4-4 Close of Claim Construction Discovery is over seven weeks away. As such, Cambrian has chosen to concentrate its efforts on this motion rather than to conduct claim construction discovery from the Defendants—of which Cambrian has not sought any. The need for such exclusion, if any, can be assessed only at the time of the *Markman* hearing, after the Court construing the claims is presented with a complete record and can make evidentiary determinations. Accordingly, Cambrian's motion should be denied as premature.

## II. Defendants Complied With the Requirements of Patent L.R. 4-2

### a. Cambrian Misinterprets Patent L.R. 4-2 to Require Expert Declarations

The Court should deny Cambrian's motion to strike because the motion is grounded on a misinterpretation of the Northern District of California's Patent Local Rules.[8] In its efforts to manufacture a dispute based on an alleged violation of the Rules, Cambrian reads Patent L.R. 4-2 out of context to require that parties must provide expert declarations by the associated deadline. While Patent L.R. 4-2(b) requires parties to "designate any supporting extrinsic evidence including . . . testimony of percipient and expert witnesses," it does not require parties to exchange actual testimony in the form of a declaration or final evidentiary support for proposed constructions. Similarly, while Patent L.R. 4-2(b) requires that for each expert witness a party "shall also provide a description of the substance of

---

[8] In its October 5, 2011 Order, the Court indicated its intention "generally to follow the process and timeline outlined in the rules for patent cases that have been adopted by the Northern District of California." (Dkt. No. 45 at 5).

that witness' proposed testimony that includes a listing of any opinions to be rendered in connection with claim construction," it does not require that the "description" include actual testimony in the form of a declaration.

Cambrian's interpretation of the Rule to require final evidentiary support for proposed constructions is in direct conflict with the language of the Rules and the larger schedule in this case.   First, Patent L.R. 4-2 is titled "Exchange of **Preliminary** Claim Constructions and Extrinsic Evidence." (Emphasis added.)   The word "Preliminary" indicates that that the proposed constructions, along with the supporting evidence, may be adjusted as part of the process set up by the Patent Local Rules.   Expert declarations at this juncture are an unnecessary formality. Indeed, after the exchange of the "preliminary" claim constructions pursuant to L.R. 4-2(a), the Rules require the parties to meet and confer for the purpose of narrowing the issues and finalizing the preparation of a Joint Claim Construction and Prehearing Statement.   (L.R. 4-2(c)).

Under Cambrian's interpretation, the parties would have to generate multiple expert declarations as the parties' positions develop during the meet and confer process—which specifically envisions good faith efforts by the parties to narrow the issues in dispute.   If Patent L.R. 4-2 necessitated the exchange of final contentions and supporting expert testimony, it would obviate the need for the additional time and procedures provided by Patent L.R. 4-3 and 4-4.

Instead, the far more common and accepted approach under the Local Patent Rules is for the parties to work together and discuss the use of expert testimony in connection with claim construction before any exchange of constructions takes place, and to seek the Court's guidance on the use of experts for claim construction.   If the Court considers expert opinions, and one or both parties indicates its intention to rely on the testimony of an expert to support its claim construction positions, the parties typically put one another on notice of any intent to rely on expert testimony by so stating in their L.R. 4-2 submissions.   This notice

generally states a party's intention to rely on an expert to support that party's proposed constructions and in rebuttal to the opposing party's constructions. The parties then will discuss the parameters of claim construction discovery (*i.e.*, timing and content of limited expert reports on claim construction issues, depositions, etc.). Such a procedure complies with the Local Patent Rules, provides each party adequate notice regarding the use of expert testimony, allows the parties to submit an expert's opinions on a narrower set of issues and in rebuttal to the opposing party's constructions after the initial exchange of constructions, and allows the parties to craft a reasonable discovery procedure for claim construction.

Cambrian's approach, involving the submission of formal expert declarations with the L.R. 4-2 exchange of preliminary constructions, will lead to additional work by both parties in the form of follow-up declarations and/or expert reports, and frustrates the purpose of streamlining claim construction discovery.

### b. Defendants Timely Disclosed Their Intent to Rely on Expert Testimony

Defendants are in full compliance with the disclosure requirements of L.R. 4-2. Defendants' e-mail on April 12, 2012 at 10:47 PM PT, the date of the Patent L.R. 4-2 Exchange, unambiguously placed Cambrian on notice that Defendants reserved the right to rely on expert testimony for purposes of claim construction, stating that "if Cambrian is intending to rely on expert testimony in its claim construction briefing or at the *Markman* hearing, Defendants will rely on expert opinions in support of their constructions and in rebuttal to Cambrian's." (Ex. 2, E-mail from Colaianni to Rupp with Attachments.) The April 12, 2012 e-mail also provided a description of the substance of the opinions to be rendered:

> Defendants may rely on the testimony of their experts to provide opinions relating to: the '312 Patent and the technology relevant to the '312 Patent, the appropriate level of skill in the art, the proper understanding of a person having ordinary skill in the art of the claim

language identified by the parties for construction as reflected in Defendants' proposed constructions and the bases therefor, and Cambrian's proposed constructions.

(*Id.*)   These disclosures fully satisfy the requirements set by Patent L.R. 4-2. Defendants' disclosures also fall within the bounds set by the Northern District of California interpreting its Patent Local Rules.   *See, e.g., HTC Corp. v. Tech Properties Ltd.*, No. 08-0882, 2010 WL 4973682, at 1 (N.D. Cal. December 1, 2010) (finding the following statements from the Joint Claim Construction and Prehearing Statement sufficient to reserve the right to rely upon expert opinions for claim construction: (1) that the plaintiff "may submit [a] declaration[ ] from . . . Dr. May in connection with claim construction briefing and will provide a summary of [the] expert opinion[ ] as part of Exhibit C [to the Joint Claim Construction and Prehearing Statement]" and (2) "David May [ ] is expected to discuss why Plaintiffs' construction is consistent with how one of ordinary skill in the art would understand the terms in context of the patents.")

Cambrian cannot and does not credibly dispute that it was placed on notice on April 12 of Defendants' intent to rely on expert testimony in support of their claim construction positions.   Instead, Cambrian manipulates the facts and the Rules in a futile attempt to manufacture a violation of the Rules and requests an extremely severe sanction that is completely out of proportion to any claimed violation.   The record shows that Defendants' have complied with the Rules, and for that reason alone, the Court should deny Cambrian's motion.

## II.   Any Alleged Violation Resulted in No Prejudice

Even accepting, *arguendo*, Cambrian's erroneous arguments that there has been a violation of L.R. 4-2, the Court should deny Cambrian's motion because Cambrian cannot and has not credibly articulated any prejudice it has suffered resulting from the alleged violation.   Courts generally view motions to strike substantive evidence with a skeptical eye.   *Reflex Packaging Inc. v. Lenovo (United*

*States), Inc.*, No. 10-01002, 2011 WL 7295479, at *1 (N.D. Cal. April 7, 2011) ("[m]otions to strike are generally regarded with disfavor.") (internal citations omitted). "Courts often require a showing of prejudice by the moving party before granting the requested relief." *Fradis v. Savebig.com*, No. 11–07275, 2011 WL 7637785, at *9 (C.D. Cal. December 2, 2011).

Despite Cambrian's rhetoric, Cambrian has not articulated any real prejudice it has suffered from any alleged violation of Patent L.R. 4-2. Cambrian's complaint, read in the most favorable light to Cambrian, is essentially that it has somehow suffered prejudice so great from an alleged three-day late disclosure that it cannot be rectified.[9] In making its argument, Cambrian completely disregards the ample time remaining in the claim construction process in this case. The Court's scheduling order provides twenty-five days between the Patent L.R. 4-2 Exchange and the L.R. 4-3 Joint Claim Construction Statement. (Dkt. No. 78.) The same scheduling order provides another thirty days between the Patent L.R. 4-3 Joint Statement and the L.R. 4-4 Close of Claim Construction Discovery on June 6, 2012. (Dkt. No. 78.)

Cambrian's statement of prejudice can be thusly summarized: the *fifty-five days* between the Patent L.R. 4-2 and 4-4 deadlines (April 12 to June 6) are insufficient to overcome the alleged "prejudice" from a follow-on disclosure that was served three days (one business day) after the L.R. 4-2 exchange and that resulted in no changes to Defendants' proposed constructions and supporting evidence, and for which Cambrian was expressly put on notice on April 12. (Compare Ex. 2, E-mail from Colaianni to Rupp with Attachments at Declaration of Thomas L. Koch to Ex. 3, Defendants' Preliminary Proposed Claim Constructions.) Moreover, Cambrian has made no attempt to mitigate any alleged prejudice by

---

[9] It is worth noting that April 12 was a Thursday, and Defendants served Dr. Koch's declaration on Sunday, April 15. The declaration was therefore submitted one business day after the Patent L.R. 4-2 exchange.

conducting expert discovery related to claim construction. Simply put, Cambrian's claim of prejudice is not credible and any alleged prejudice is heavily outweighed by the value to the Court in receiving evidence from Defendants' expert should Cambrian's expert be permitted to testify.

Courts applying the Local Patent Rules have denied motions to strike in far more exigent circumstances. *See Reflex Packaging Inc.*, 2011 WL 7295479, at *3 (finding the disclosure of an expert less than one month after the parties exchanged Preliminary Claim Constructions "does not rise to the level of prejudice necessary to warrant striking the testimony of [the] expert."); *see also Interwoven, Inc. v. Vertical Computer Systems, Inc.*, No. 10-4645, 2011 WL 6936186, at *5, n. 2 (N.D. Cal. December 30, 2011) (noting that changes to proposed constructions between the filing of the Joint Claim Chart and Opening Briefs do not contravene the purpose of the Patent Local Rules); *see also Rambus, Inc. v. Hynix Semiconductor, Inc.*, 569 F. Supp. 2d 946, 980-981 (N.D. Cal. July 8, 2008) (refusing to strike proposed constructions changed after the filing of the Joint Claim Construction Chart because it is "too harsh" and it may "help the court to construe the terms in dispute").

## III.   Excluding Expert Testimony Would Severely Prejudice Defendants If Cambrian's Expert is Allowed to Testify

On the other hand, the requested exclusion of Defendants' expert would result in tremendous prejudice for the Defendants if Cambrian's expert is permitted to testify. The Federal Circuit has consistently held that the intrinsic record (the claim language, patent specification and prosecution history) are the primary and most reliable sources of evidence to determine the meaning of patent claim language, and Defendants believe that the intrinsic record here is sufficient to resolve any disputes regarding the claim language at issue. Should the Court conclude the intrinsic evidence is insufficient and decide to hear from experts, however, Defendants would be severely prejudiced if only Cambrian's expert is

allowed to testify.  Such an imbalance in the evidence would deprive the Court of the benefit of hearing two experts' differing viewpoints on the meaning of the disputed claim language; an exercise that Cambrian correctly identifies above as "the single most important phase of patent litigation."

Moreover, exclusion of Defendants' expert would restrain Defendants' ability to fully adjust their proposed constructions through the Patent L.R. 4-3 and 4-4 phase because an entire class of extrinsic evidence would be off limits. Ultimately, this handicap would prevent the proper narrowing of claim construction issues for the Court.  Such a result would frustrate not only the purpose of the Local Patent Rules but also make the Court's job more difficult.

In light of potentially great prejudice to Defendants, especially considering lack of any prejudice suffered by Cambrian, the interests of justice require that the Court deny Cambrian's motion. *See Genentech, Inc. v. Trustees of the University of Pennsylvania*, No. 10-02037, 2011 WL 866599, at *2 (N.D. Cal. March 10, 2011) (denying motion to strike under L.R. 4-3(b) and noting that "justice is best served when issues are decided on the merits.")

## CAMBRIAN'S CONCLUSION

For all of the foregoing reasons, Cambrian respectfully requests that Dr. Koch's Declaration be stricken and that the Defendants be precluded from relying on Dr. Koch, or any other expert, for purposes of claim construction.

## DEFENDANTS' CONCLUSION

Cambrian's motion is moot if the Court will not consider expert opinion for the purposes of claim construction.  Accordingly, the Court's guidance is respectfully requested on the issue of reliance on expert witnesses for claim construction.  If the Court will consider expert opinions, Cambrian's motion is premature because any motion to strike evidence related to claim construction should be heard at the time of the *Markman* hearing, after all claim construction discovery is complete and the Court in construing the claims can determine what

1    evidence is necessary to ensure a complete record.

2         On the merits, Cambrian's motion should be denied because Defendants have

3    fully complied with Patent L.R. 4-2.  Even assuming, *arguendo*, that there has been

4    a violation of Rule 4-2 (there has not), Cambrian's motion should be denied because

5    Cambrian cannot and has not credibly articulated any prejudice it has suffered due to

6    any violation, and any prejudice to Cambrian is heavily outweighed by the prejudice

7    to Defendants if only Cambrian's expert is allowed to present expert testimony as

8    part of the claims construction process.  For all the reasons stated above, the

9    Defendants respectfully request that the Court deny Cambrian's motion to strike and

10   preclude Defendants from relying on expert testimony for purposes of claim

11   construction.

12                                       Respectfully submitted,

13   DATED:  April 23, 2012              KIRTON | McCONKIE, P.C.

14
                                        By:/s/James B. Belshe
15                                      James B. Belshe (*pro hac vice*)
                                        James T. Burton (*pro hac vice*)
16
                                        KINDRED | POSEY
17                                      Alan M. Kindred (Bar No. CA 135145)
                                        Ivan Posey (Bar No. CA 196386)
18
19                                      *Attorneys for Plaintiff*
                                        Cambrian Science Corporation
20

21   DATED:  April 24, 2012             FISH & RICHARDSON, P.C.

22
                                        By:/s/ Linhong Zhang
23                                      Ruffin B. Cordell (*pro hac vice*)
24                                      Joseph V. Colaianni (*pro hac vice*)
                                        Peter J. Sawert (*pro hac vice*)
25                                      Linhong Zhang (*pro hac vice*)
                                        1425 K Street NW, 11th Floor
26                                      Washington, DC 20008
27
                                        Michael A. Amon (Bar No. CA 226221)
28                                      Michael M. Rosen (Bar No. CA 230964)

                                        26

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Olga I. May (Bar No. CA 232012)
12390 El Camino Real
San Diego, CA 92130-2081

*Attorneys for All Named Defendants*

27

1

**<u>CERTIFICATE OF SERVICE</u>**

2     I hereby certify that on this the 25th day of April, 2012, a copy of the

3 foregoing was filed with the Court's CM/ECF system, which provides service to all

4 counsel of record.

5

6                                /s/ Heather Bartlett

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28